\*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
:
SCOTT D. GUSSIN,                        :    Civil Action No. 08-3723 (FLW)
:
            Plaintiff,                  :
:                 **OPINION**
    vs.                                 :
:
:
SCOTT ELY, JOSEPH O'GORMAN, et al.,     :
:
            Defendants.                 :
_____

**WOLFSON, United States District Judge:**

      This matter comes before this Court upon a motion filed by Defendants Scott Ely ("Ely"), Joseph O'Gorman ("O'Gorman"), Robert Conger, Jack Griffiths, Michael Delia, Thomas MacDonald, Steve Raimondo, William Schoenleber, Linda Eagleton, Jon Doe(s) and Jane Doe(s) (collectively "Defendants") to dismiss Plaintiff Scott Gussin's ("Plaintiff") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, pursuant to Fed. R. Civ. P. 12(c).[1]  The Amended Complaint alleges that Defendants, former and present employees of the State of New Jersey, violated the following: (i) Article VI, Clause 2 of the United States Constitution; (ii) First, Fifth and Fourteenth Amendments; (iii) 42 U.S.C. § 1985;

---

[1] Plaintiff attempts to disqualify the State Attorney General from representing the State Defendants because of an alleged conflict of interest arising from Attorney General's Office having intimate knowledge of the case.  Plaintiff's argument is specious.  The State Defendants are statutorily entitled to be represented by the Attorney General.  N.J.S.A. 52:17A-4.

(iv) 42 U.S.C. § 1983; (v) New Jersey Taxpayers Bill of Rights-P.L. 1992;[2] and (vi) New Jersey "Statute 25" [sic]. For the reasons that follow, Defendants' motion is granted.

I.      Overview

For the purposes of this motion, the Court takes Plaintiff's allegations in his pro se Amended Complaint as true. Plaintiff is a tobacco product wholesaler who purchased cigarettes and cigars between April 1, 1997 and September 30, 1999. Defendant Ely, a tax auditor for the State of New Jersey, conducted an audit of Plaintiff's tax liabilities for the said period and found that Plaintiff owed a total of $66,472.86 under the Tobacco Products Tax ("Tobacco Tax"). However, Plaintiff claims that various New Jersey tax assessors and auditors, including Ely, violated Plaintiff's constitutional rights by engaging in racial discrimination and criminal behavior when conducting the audit of his tobacco business. As a result of these alleged acts, Plaintiff closed his business, suffered financial hardship and was placed on a Publication of Tax Indebtedness.

Specifically, Plaintiff's allegations with respect to Defendants' alleged "criminal conduct" are as follows: Count One of the Complaint alleges that Plaintiff is exonerated from the Tobacco Tax because Ely provided Plaintiff with a release from said tax, but Defendants' continuing tax collection activities resulted in the loss of Plaintiff's business.[3] Count Two

---

[2]Plaintiff's claims with regard to the Taxpayers Bill of Rights are nothing more than claims of improper service, which are covered by Plaintiff's claims under the Fourteenth Amendment.

[3]Perhaps to show malice or motive on the part of Ely, Plaintiff has provided the certification of Jeffrey E. Michelson ("Michelson"), CEO of Glikin Brothers, Inc. Michelson certified that Plaintiff purchased cigarettes and cigars from Glikin Brothers, Inc. and that Ely approached Michelson to inquire as to whether Glikin had properly charged the New Jersey cigar tax on purchases of cigars made by Plaintiff. Michelson assured Ely that the tax had been

alleges that Defendants withheld evidence that Plaintiff did pay the Tobacco Tax, and the improper tax collection activities that followed caused Plaintiff great distress and financial hardship, and prevented Plaintiff from continuing his business when potential employers and suppliers refused to transact business with him in light of these false tax claims. Count Three alleges that Ely verbally made demeaning comments about Plaintiff to a business associate, and that resulted in a loss of reputation among potential business partners. Count Four alleges that Defendants failed to properly serve Plaintiff as required by the New Jersey Tax Payers Bill of Rights, misinformed Plaintiff about proper service, and subsequently claimed it was a mistake and attempted to "cover-up" the mistake.

     Moreover, Plaintiff alleges that he was improperly placed on the state's list of "Top 100 Debtors" and the State reported his failure to pay taxes to credit agencies, which caused Plaintiff financial hardship and great distress. Count Five alleges that Defendants denied Plaintiff the opportunity to rebut the tax claims, which prevented Plaintiff from exercising his constitutional rights. Count Six alleges various other improper acts by Defendants in connection with the collection of the Tobacco Tax that have purportedly prevented Plaintiff from seeking justice and securing gainful employment due to the continuous need to respond to Defendants' charges.

---

properly charged and a subsequent audit of Glikin resulted in only a "very small amount of additional tax due [to] the State of New Jersey." Nevertheless, according to Michelson, Ely visited Glikin's place of business at least ten more times and allegedly made remarks to Michelson about his desire to ensure Plaintiff paid the cigar tax. Ely allegedly expressed his dislike for Plaintiff and called him a "son of a bitch." Michelson Cert. Despite Michelson's representations, Ely ultimately found that Glikin Brothers, Inc. did not charge any Tobacco Products Tax on Plaintiff's applicable purchases until March 1, 2002. Audit Report of Scott Ely.

3

Plaintiff files the instant action alleging that Defendants' conduct violated his constitutional rights under the First, Fifth, and Fourteenth Amendments. Defendants respond jointly with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## II. Discussion

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As the Third Circuit stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B. Discussion**

At the outset, the Court must determine whether it has jurisdiction over this case. Defendants argue, inter alia, that the Tax Injunction Act of 1937 ("TIA"), coupled with the principles of comity, prohibit this Court from considering any of Plaintiff's claims. Defendants submit that because Plaintiff could have presented his tax-related claims in the state courts, this Court does not have subject matter jurisdiction over this case. Plaintiff counters that Defendants have mistakenly applied tax law to a case that involves criminal actions by the state agents.

As a preliminary matter, the Court notes that because Plaintiff is seeking money damages as compensation for violations of his constitutional rights, all of his causes of action are properly brought under § 1983. Furthermore, the Court's jurisdictional analysis of Plaintiff's § 1983 claims applies equally to Plaintiff's § 1985 conspiracy claims.[4]

---

[4]Because the Court reaches its decision based solely on jurisdictional grounds, the Court need not address Defendants' alternative grounds for dismissal, namely, § 1983 does not apply to

Under the TIA, a district court shall not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Although § 1983 claims are not specifically addressed in the language of the TIA, the Supreme Court has held that, with regard to a § 1983 challenge to the administration of state tax laws, the principle of comity "bars federal courts from granting damages relief in such cases." Fair Assessment in re Al Estate Ass'n v. McNary, 454 U.S. 100, 105-07 (1981).  Thus, even though the TIA expressly prohibits a federal court from providing declaratory relief in state tax cases, the principle of comity "supplements the [TIA] and bars federal courts from awarding monetary damages in state tax disputes." Frybarger v. NJ Dep't of the Treasury, No. 05-4648, 2006 U.S. Dist. LEXIS 93365, at *5-6 (D.N.J. Dec. 27, 2006). Accordingly, such § 1983 plaintiffs must "seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in [the United States Supreme Court]." Fair Assessment, at 116.  A state remedy will be deemed sufficient if it "provides the taxpayer with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections." Hardwick v. Cuomo, 891 F.2d 1097, 1105 (3d Cir. 1989) (citing Cal. v. Grace Brethren Church, 457 U.S. 393, 412 (1982)).  As a threshold matter, the court must determine if a § 1983 claim is a challenge to a state tax assessment, or brought under § 1983 to redress constitutional violations and common law torts.  See Frybarger, at *8.

Here, with the exception of Count Three, all of Plaintiff's claims clearly attack the tax assessment itself or the tax collection process.  Despite Plaintiff's efforts to avoid a direct

---

state actors acting in their official capacity; qualified immunity; and the Eleventh Amendment.

challenge of the tax assessment, Plaintiff's claims arise solely from Defendants' alleged unlawful tax collection practices.  For example, the allegations of Count One imply that the financial burdens imposed upon Plaintiff by the tax liability contributed to the closing of his business.  Furthermore, Count Four claims that, as a result of Plaintiff's refusal to pay the assessed taxes, Plaintiff's business suffered when the State included him in the "Top 100 Debtors" list and filed a negative credit report against him.  But these are consequences for any person who does not satisfy his or her tax obligations.  Accordingly, in order for this Court to provide relief for Plaintiff's "injuries," the Court would necessarily have to invalidate the tax assessment itself, which is expressly prohibited by the TIA.

In addition, in Counts One, Two, Four, Five and Six, all of Plaintiff's allegations involve various actions by Defendants in furtherance of the collection of taxes.  While these claims do not directly attack the tax assessment itself, "a judicial determination of official liability for the acts complained of, even though necessarily based upon a finding of bad faith, would have an undeniable chilling effect upon the actions of all [] officers."  Fair Assessment, 454 U.S. at 115.  Such federal involvement would "in every practical sense operate to suspend collection of the state taxes."  Id.  Under the principles of federalism, absent allegations that a state forum would not provide a plain, speedy and efficient remedy, which Plaintiff does not allege here, federal courts are prohibited from exercising jurisdiction over the administration of state taxes.  Id. at 116.  In that regard, other courts have held that New Jersey does provide adequate protection for individual plaintiffs in this context.[5]  See Frybarger, at *9; Reagle v.

---

[5]Although Gussin makes no argument with regard to any limitations period to bring his claims in state court, or whether his claims would be time-barred, nevertheless the Court notes that even if they are now time-barred, a taxpayer's failure to take advantage of a remedy does not render it insufficient.  Burris v. Little Rock, 941 F.2d 717, 721 (8th Cir. 1991).

Elliott, 80 Fed. Appx. 737, 738 (3d Cir. 2003).  Accordingly, this Court finds that it lacks jurisdiction over Counts One, Two, Four, Five and Six of the Complaint, and therefore, these claims are dismissed, without prejudice.

With regard to Plaintiff's allegations under Count Three of the Complaint, the Court finds that Plaintiff alleges no constitutional violations by Defendants.  To the extent that these allegations are state-based tort claims against state officials, the Court may exercise supplemental jurisdiction over these claims if they form a part of the same case or controversy as Plaintiff's federal claims.  28 U.S.C. § 1367(a).  Since all of Plaintiff's federal claims have been dismissed for lack of jurisdiction, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state tort claims.[6]

---

[6]Plaintiff's claims under Article VI, Clause 2 of the Constitution and New Jersey "Statute 25" are also dismissed.  With regards to the Article VI claim, the Supremacy Clause has no relevance to the facts of this case.  There are no conflicts between the applicable federal and state laws that govern the instance matter, nor is there any dispute that any applicable law cannot or should not be applied to any of the Defendants.  With regards to the "Statute 25" claim, the Court cannot discern, from the Complaint or any other material on the record, to which state statute Plaintiff is referring.  As such, both causes of action are dismissed for failures to state a claim.

**III.     Conclusion**

For the foregoing reasons, the Court finds that it lacks jurisdiction over Counts One, Two, Four, Five and Six, and the Court declines to exercise jurisdiction over Count Three of the Amended Complaint.  Therefore Defendants' Motion to Dismiss is GRANTED, and all claims are DISMISSED without prejudice.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: December 29, 2009